UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 05-187-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN JOAN PATRICK, | ) | |
| BETTY CAROL LITTLETON | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendants | ) | |
| | ) | |

**         **      **      **      **

This matter is before the Court following a hearing on the defendants' motion to suppress.  Fully briefed, the issues presented are ripe for decision.

**I.   Facts**

There are few, if any, significant discrepancies between both parties' accounts of the relevant events.

On June 6, 2002, the IRS issued a broad summons to the records custodian of Lexington Specialties College ("LSC") seeking basically all records in the college's possession relating to the financial transactions of Carolyn Patrick, LSC, or a separate entity called Lexington Specialties Corporation, Inc.  LSC did not produce these documents, but the IRS did not seek judicial enforcement of the summons.

In August 2002, the IRS learned that LSC had been evicted from its offices and facilities on Walton Avenue.  The owner of the building, GP Enterprises, obtained the eviction order on July 8,

2002, and a constable escorted LSC employees from the premises on July 10.  At some point thereafter, the locks were changed.

An IRS agent contacted GP Enterprises on August 13, who then, according to the prosecution, confirmed the eviction and informed the agent that LSC had left records in the building.  When the agent met an employee of GP Enterprises that same afternoon, Kenneth Patrick was loading boxes of records into a van.  The employee told the agent that he had told Patrick to remove the records because GP Enterprises was planning to throw the documents in the trash.

The agent asked if he could remove the records and, after the GP employee consulted with the building owner, was told that he could if the records were subpoenaed.  Rather than obtain a subpoena, the IRS issued a second summons directed to GP Enterprises seeking the same documents requested in the original summons and also seeking the records of Betty Littleton, who had been the Chief Executive Officer of LSC.  The agent removed fifteen boxes of documents.  While he was loading the documents, Carolyn Patrick arrived.  The prosecution and defense disagree whether she objected to their removal.

## III. Discussion

The prosecution reiterates its argument that a tenant who has been evicted has no reasonable expectation of privacy in the premises and therefore no Fourth Amendment interest.  *See United States v. Hunyady*, 284 F. Supp. 2d 755 (E.D. Mich. 2003).  The case

law weighs heavily in the prosecution's favor on this particular point.

The main thrust of the Defendants' argument is that, even though they left the documents in the Walton Building after their eviction, they retained a property interest, and therefore a reasonable expectation of privacy, in the documents themselves.[1] Both defendants argue that they did not abandon the property, and Patrick also argues that there was a bailment relationship between the defendants and GP Enterprises.

Even if the defendants retained a property interest in the documents left at the Walton Building, the case law does not support their argument that they had a reasonable expectation of privacy. It is well-established at this point that courts will not tie Fourth Amendment rights to "'arcane' distinctions developed in property law." *United States v. Barry*, 673 F.2d 912 (6th Cir. 1982) (citations omitted). In *Barry*, the Sixth Circuit found that the defendant did not have a reasonable expectation of privacy in a package he shipped through a bailee because he placed it beyond his control and thereby "suffered a reduction in the scope of privacy he could reasonably expect." *Id.* at 919. The court's finding was based to a large extent on the risk of exposure inherent in the bailment coupled with the defendant's failure to

---

[1] Littleton also spends some time discussing the defective procedures used by the IRS agent, arguing that lack of notice prevented her from asserting her expectation of privacy. This seems irrelevant, since she either had a reasonable expectation or she didn't, regardless of whether she could assert it.

take precautions to protect himself from this risk. *See Id.* Similar circumstances exist in this case. By leaving the documents in a building they did not own, the defendants left themselves open to the risk of exposure. In Defendant Patrick's own words, "the records in question could easily have been placed on the street by the landowner, had he chosen to do so," Patrick's Mem. in Supp. Mot. to Suppress at 7, and the IRS agent obtained the records "before they could be stored in a more secure location," *Id.* at 5. Thus the defendants lost their expectation of privacy when possession of the property in which their records were stored were turned over to the property owner.

**IT IS ORDERED** that the defendants' motions to suppress be, and the same hereby are, **DENIED**.

This the 28th day of August, 2006.



**Signed By:**

**_Joseph M. Hood_**

**United States District Judge**